Electronically Filed - CITY OF ST. LOUIS - October 13, 2023 - 10:26 AM

**IN THE CIRCUIT COURT OF THE CITY OF ST. LOUIS**
**STATE OF MISSOURI**

| | |
|---|---|
| MONSIGNOR ALFRED SCHULER AS NEXT FRIEND OF, A.S.A, A.S.N.L., A.C.M.J., A.P.S.J., A.P.J.M., A.L.P.R., A.I.M.G., B.A.M.R., B.M.I.L., B.V.E.E., B.V.S.Y., B.E.L.S., B.C.A.M., C.A.S., C.A.T., C.Y.J.E., C.S.R.D., C.M.Y.E., C.J.K.S., C.J.F.J., C.R.D., C.A.E.D., D.A.Y.Y., D.A.Y.S., D.G.J.M., D.L.S.L., E.E.Y.M., E.E.L.E., E.E.E.M., E.O.A.E., E.O.G.I., E.V.G.A., F.B.L.Y., G.Z.A.S., H.U.Y.F., H.G.B.M., H.H.H.M., J.M.M.B., J.A.T.H., J.A.K.L., L.V.M.A., M.L.T.S., M.E.D.P., M.E.D.L., O.A.S.D.M., P.M.M.H., P.M.P.E., P.S.S.Y., P.C.D.A.D., P.L.Y.A., P.P.R.C., Q.P.E.E., Q.P.A.F., R.P.D., R.P.M.F., R.P.D.A., S.R.Y.Y., S.G.A.M., S.H.F.R., S.C.X.B., S.M.D.C., S.V.C.G., S.R.E., S.R.M., T.S.N.R., U.Q.J.B., V.S.Y.A., V.P.K.A., V.P.N.A., Z.A.A.A., ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | |
| Plaintiffs, ) ) | Case: |
| v. ) ) | Division: |
| DOE RUN RESOURCES CORPORATION, D.R ACQUISITION CORP., MARVIN K. KAISER, ALBERT BRUCE NEIL, JEFFREY L. ZELMS, THEODORE P. FOX III, THE RENCO GROUP, INC., RENCO HOLDINGS, INC., and IRA L. RENNERT., ) ) ) ) ) ) ) ) | Personal Injury in Excess of Twenty-Five Thousand Dollars<br><br>JURY TRIAL DEMANDED |
| Defendants. ) ) ) | |

**FIRST AMENDED COMPLAINT**

COMES NOW, Plaintiff, Monsignor Alfred Schuler, as Next Friend of, A.S.A, A.S.N.L.,

A.C.M.J., A.P.S.J., A.P.J.M., A.L.P.R., A.I.M.G., B.A.M.R., B.M.I.L., B.V.E.E., B.V.S.Y.,

B.E.L.S., B.C.A.M., C.A.S., C.A.T., C.Y.J.E., C.S.R.D., C.M.Y.E., C.J.K.S., C.J.F.J., C.R.D.,

C.A.E.D., D.A.Y.Y., D.A.Y.S., D.G.J.M., D.L.S.L., E.E.Y.M., E.E.L.E., E.E.E.M., E.O.A.E.,

E.O.G.I., E.V.G.A., F.B.L.Y., G.Z.A.S., H.U.Y.F., H.G.B.M., H.H.H.M., J.M.M.B., J.A.T.H.,

1

J.A.K.L., L.V.M.A., M.L.T.S., M.E.D.P., M.E.D.L., O.A.S.D.M., P.M.M.H., P.M.P.E., P.S.S.Y.,

P.C.D.A.D., P.L.Y.A., P.P.R.C., Q.P.E.E., Q.P.A.F., R.P.D., R.P.M.F., R.P.D.A., S.R.Y.Y.,

S.G.A.M., S.H.F.R., S.C.X.B., S.M.D.C., S.V.C.G., S.R.E., S.R.M., T.S.N.R., U.Q.J.B.,

V.S.Y.A., V.P.K.A., V.P.N.A., Z.A.A.A., by and through undersigned counsel, on behalf of

themselves, sue Defendants, DOE RUN RESOURCES CORPORATION, D.R ACQUISITION

CORP., MARVIN K. KAISER, ALBERT BRUCE NEIL, JEFFREY L. ZELMS, THEODORE

P. FOX III, THE RENCO GROUP, INC., RENCO HOLDINGS, INC., and IRA L. RENNERT,

(collectively "Defendants") and for their Complaint allege, upon information and belief and

based on the investigation to date of their counsel, as follows:

### INTRODUCTION

*"No safe blood lead level in children has been identified. Lead exposure can affect nearly every system in the body."*

-National Center for Environmental Health, Division of Emergency and Environmental Health Services[1]

Time Magazine has named La Oroya, Peru as one of the 10 most polluted places in the

world.[2] This is an action to seek damages from Defendants for injuries, damages and losses

suffered by each and every minor plaintiff named herein, who were minors or *in utero* at the

time of their initial exposures and injuries as a result of exposure to the release of lead and other

toxic substances from Defendants' ownership, use, management, supervision, storage,

maintenance, disposal and release of materials containing lead and other toxic substances from

the lead smelter owned and/or operated by the Defendants in the region of La Oroya, Peru. At

---

[1] http://www.cdc.gov/nceh/lead/.
[2] Walsh, Bryan, *The World's Most Polluted Places,* Time Magazine, 2007

Electronically Filed - CITY OF ST. LOUIS - October 13, 2023 - 10:26 AM

critical times during gestation and/or their developmental years and to the present, the minor plaintiffs were exposed to damaging levels of lead and other toxic substances.

## THE PARTIES

**PLAINTIFFS**

1.      All of the minor Plaintiffs have lived or were *in* utero in the region of La Oroya Peru during relevant times, for the purpose of prosecuting the claims alleged herein.

2.      Plaintiff's Next Friend Msgr. Alfred Schuler is and at all relevant times herein has been a resident of the City of Saint Louis, Missouri.

**DEFENDANTS**

3.      Defendant The Doe Run Resources Corporation ("Doe Run") is an international natural resource company focused on mining, smelting and fabrication of metals. At all relevant times, Doe Run was a New York corporation with its principal place of business in St. Louis, Missouri. At all relevant times, Defendant Doe Run owned, and either directly or through other Defendants, operated, used, managed and supervised, the La Oroya metallurgical complex (the "La Oroya Complex") which stored, maintained, or controlled various properties, including a lead smelter, and the waste on such properties. The La Oroya Complex also stored materials containing lead and other toxic substances released from the complex. Upon information and belief, Doe Run is the second largest lead producer in the world and has reported profits in the 100's of millions of dollars.

4.      Defendant Doe Run wholly owns Doe Run Cayman, Ltd., a Cayman Island corporation, which owns Doe Run Peru.

5.      Doe Run Cayman Ltd. has no operations separate from "owning" Doe Run Peru.

Electronically Filed - CITY OF ST. LOUIS - October 13, 2023 - 10:26 AM

6.     At all relevant times, Defendant Doe Run both directly and through its ownership of Doe Run Cayman, Ltd., controlled and operated Doe Run Peru. Doe Run Peru was an agent of the Defendants. Defendants expressly or impliedly consented to Doe Run Peru acting on their behalf and Doe Run Peru was subject to Defendants' exclusive control. Doe Run had the right to control and did control the operations, storage, generation, handling, disposal, and release of toxic and harmful substances that led to the minor plaintiffs' injuries.  Such control occurred, upon information and belief, solely from the States of Missouri and New York in the form of decisions, orders, policies and requirements communicated to Defendants' agents in La Oroya, Peru

7.     Defendant D.R. Acquisition Corp. is and at all times relevant herein was a Missouri corporation with its principal place of business in Missouri. D.R. Acquisition Corp. owns 100% of Doe Run.

8.     Defendant Renco Holdings, Inc. and Defendant The Renco Group, Inc. (collectively "Renco") are New York corporations with their principal places of business in New York.  At all relevant times, Defendant D.R. Acquisition Corp., the current owner of Doe Run Peru, has been a wholly owned subsidiary of Defendant Renco.  Renco owns 100% of stock of Defendant Doe Run directly or indirectly through D.R. Acquisition Corp.

9.     At all relevant times, Defendant Renco was doing business as the Doe Run Company. Defendant Renco owned, operated, and managed Doe Run through its agents, servants, and employees acting within the course and scope of their employment, service, and agency.  As the owner who controls Doe Run, Renco is liable for the activities and the toxic environmental releases from the La Oroya Complex since the date Defendants' purchased the complex, October 24, 1997.

Electronically Filed - CITY OF ST. LOUIS - October 13, 2023 - 10:26 AM

10.     Defendant Ira L. Rennert is a resident of the City of New York, State of New York. At all relevant times, Defendant Rennert was a director, officer, and agent of Defendant Renco and Defendant Doe Run and the controlling owner of all of the corporate defendants. Defendant Renco is owned by Defendant Rennert who serves as Renco's Chairman and Chief Executive Officer. As a result of such ownership, Defendant Rennert controls Doe Run and its subsidiaries.

11.     Defendant Marvin K. Kaiser is a resident of the City of St. Louis, State of Missouri. From the time of Doe Run's purchase of the metallurgical complex until approximately February 2006, Defendant Kaiser was an officer and agent of Defendant Doe Run.

12.     Defendant Albert Bruce Neil is a resident of the City of Kirkwood, State of Missouri. From approximately 2003, Defendant Neil was and continues to be an officer and agent of Defendant Doe Run.

13.     Defendant Jerry Pyatt is a resident of Kirkwood, Missouri. From approximately 2003 to the present, Defendant Pyatt has been an officer and agent of Defendant Doe Run.

14.     Defendant Jeffery L. Zelms is a resident of the City of Camdenton, State of Missouri. From the time of Doe Run's purchase of the metallurgical complex until approximately April 2006, Defendant Zelms was an officer and agent of Doe Run.

15.     Defendant Theodore P. Fox III is a resident of the City of Eureka, State of Missouri. From approximately September 2006, Defendant Fox was and continues to be an officer and agent of Doe Run.

## FURTHER IDENTIFICATION OF THE DEFENDANTS

16.     Defendants Doe Run and Renco purchased the La Oroya metallurgical complex in 1997.

Electronically Filed - CITY OF ST. LOUIS - October 13, 2023 - 10:26 AM

17.     As owner of the La Oroya metallurgical complex, Doe Run is liable for the activities and the toxic environmental releases from the complex since the date Defendants' purchased the complex, October 24, 1997.

18.     At relevant times, Doe Run Peru was an agent of the Defendants. Defendants consented, expressly or impliedly, to Doe Run Peru acting on its behalf and Doe Run Peru was subject to Defendants' exclusive control. Doe Run had the right to control and did control the operations, storage, generation, handling, disposal, and release of toxic and harmful substances that led to the minor plaintiffs' injuries. Such control occurred, upon information and belief, solely from the States of Missouri and New York in the form of decisions, orders, policies and requirements communicated to Defendants' agents in La Oroya, Peru.

19.     Defendant Doe Run is the second largest total lead producer in the world and has reported profits in the 100's of millions of dollars during relevant times. Doe Run is an international natural resource company based in St. Louis, Missouri and focused on the mining, smelting, recycling and fabrication of metals.

20.     Defendants owned, operated, maintained, managed and/or used the La Oroya metallurgical complex and related operations and facilities, or acted in conspiracy with each other defendant and continue to do so in a way that negligently, carelessly and recklessly generated, handled, stored, released, disposed of, and failed to control and contain the metals and other toxic substances used and generated by the complex, resulting in the release of toxic metals and gases and other toxic substances onto and around the properties on which minor plaintiffs have in the past and/or continue to reside, use and visit, and/or were exposed, and purposefully withheld information and/or deliberately deceived the minor plaintiffs with regard to the dangers of such exposures, resulting in toxic exposure to minor plaintiffs.

Electronically Filed - CITY OF ST. LOUIS - October 13, 2023 - 10:26 AM

21.     Defendant D.R. Acquisition Corp., a wholly owned subsidiary of defendant Renco, owns 100% of Defendant Doe Run's common stock, both voting and non-voting. There is no established public trading market for these shares. All (100%) of Doe Run's issued and outstanding common and preferred stock is directly or indirectly owned by Renco through D.R. Acquisition Corp.

22.     Renco is owned by Defendant Rennert who serves as Renco's Chairman and Chief Executive Officer, for himself and members of his family. As a result of such ownership, Defendant Rennert controls Doe Run and its subsidiaries.

23.     At all times relevant hereto, Defendant Renco was and continues to be a corporation organized and existing by virtue of law doing business as the Doe Run Company. Defendant Renco owned, operated, and managed Doe Run by and through its agents, servants, and employees acting within the course and scope of their employment, service, and agency and continues to do so. As owner of Doe Run, Renco is liable for the activities and the toxic environmental releases from the La Oroya metallurgical complex since the date Defendants' purchased the complex, October 24, 1997.

24.     Each of the corporate Defendants owned, operated, used, managed, supervised, and/or controlled the La Oroya complex and related operations and facilities in La Oroya and/or was a partner in or the legal and beneficial owner of the partnership interest in a general partnership known as the Doe Run Company, which is a fictitious name used by the partnership. As owners, operators and/or partners in the Doe Run Company, the corporate Defendants are jointly and severally liable for acts and releases related to the La Oroya complex and related operations and facilities.

Electronically Filed - CITY OF ST. LOUIS - October 13, 2023 - 10:26 AM

25.    Some or all of the corporate Defendants, pursuant to various written agreements, including the various Doe Run partnership agreements as amended and restated, expressly or impliedly assumed liabilities arising out of the operation of the La Oroya complex and related operations and facilities since October 24, 1997. In addition and alternatively, all of the Defendants acted jointly and in conspiracy with each other. The objectives of the conspiracy included the failure to adequately control the emissions from Defendants' metallurgical complex and related operations and facilities that Defendants knew were being transported to properties on which minor plaintiffs have and/or continue to reside, use or visit, and/or not to implement adequate pollution controls at Defendants' metallurgical complex and related operations and facilities, and or and purposefully concealing information and/or deliberately deceiving the minor plaintiffs with regard to the dangers of such exposures, with the purpose of the cost and reduction of profits, bonuses and the value of wages, stock, and/or stock options of Doe Run as well as the corporate Defendants.

26.    The corporate Defendants, while located in the States of Missouri and/or New York, exert complete control, not merely stock control, but complete domination of finances, policies, and business practices of Doe Run Peru. The control is so complete that the subsidiary has never had a separate mind, will, or existence of its own. Defendants control environmental expenditures, production practices, use of technology that would limit emissions, and policies including public relations policies and decisions regarding warnings given to minor plaintiffs. Such control is used by Defendants to make substantial profit while causing injuries to the minor plaintiffs, constituting fraud and injustice that violates the minor plaintiffs' legal rights. This unjust use of control proximately caused the minor plaintiffs' injuries.

Electronically Filed - CITY OF ST. LOUIS - October 13, 2023 - 10:26 AM

27.     At all times, Defendants were acting by and through its partners, subsidiaries, agents, servants, and employees who were acting within the scope of their partnership, agency, or employment and in conspiracy with each other.

28.     As a direct and proximate result of the releases by Defendants, minor plaintiffs have suffered injuries, currently suffer and will continue to suffer damages and losses which include but are not limited to physical and psychological injuries, learning and other permanent disabilities, pain, mental anguish, emotional distress, the loss of household services, the cost of medical, educational and rehabilitation expenses and other expenses of training and assistance, and loss of earnings, income, and earning capacity. Such injuries, damages and loses are reasonably likely to continue to occur in the future.

## JURISDICTION

29.     This Court has personal jurisdiction over all parties.

30.     The acts and omissions complained of in this action occurred in this State by Defendants and employees and officers of the corporate defendants, all acting within the course and scope of their agency and employment in this state.

## VENUE

31.     Venue is proper in this Court pursuant to §508.010 RSMo (2014).

## FACTUAL ALLEGATIONS

32.     The town of La Oroya is a mining town located in the central Andean highlands of Peru, at an elevation of approximately 3,750 meters above sea-level. For more than 500 years, the settlements near La Oroya are believed to have been working small-scale mining operations. In the last one hundred years however, with the creation of the La Oroya Complex, production

Electronically Filed - CITY OF ST. LOUIS - October 13, 2023 - 10:26 AM

dramatically increased, contaminating the local population with it. The La Oroya Complex is located only meters from the city center.

33.     The La Oroya Complex recovers 11 metals including copper, zinc, silver, lead, cadmium, indium, bismuth, gold, selenium, tellurium and antimony, as well as numerous by-products (e.g., zinc sulfate, copper sulfate, sulfuric acid, arsenic trioxide, zinc dust, zinc-silver concentrates) from the poly-metallic concentrates produced by the central Andean mines

34.     In 1922, the privately owned Cerro de Pasco Copper Corporation established the La Oroya Complex for copper smelting and refining. Cerro de Pasco added a lead smelter and refinery in 1928, a sulfuric acid plant in 1939, a silver refinery in 1950, and a zinc refinery in 1952.

35.     The Complex comprises four key circuits. These circuits are the copper smelter and refinery (the "Copper Circuit"); the lead smelter and refinery (the "Lead Circuit"); an anode residue plant and silver refinery (the "Precious Metals Circuit"); and zinc roasting plant, leaching and purification plant and refinery (the "Zinc Circuit," and collectively the "Circuits.")

36.     The Complex also includes numerous other facilities designed to process by-products released during the smelting process, including sulfuric acid plants, an oxygen plant, and several pilot plants to recover minor metallic by-products.

37.     The following diagram shows the main facilities in each circuit and the interrelationships between the four circuits:

Electronically Filed - CITY OF ST. LOUIS - October 13, 2023 - 10:26 AM



38.     Because smelters process concentrates to create a pure ore by burning-off and/or separating out unwanted impurities, it is very difficult to control emissions of such substances.

39.     This is true of any smelter, but the La Oroya Complex faces particular challenges in this regard because the integrated smelting processes are among the most complex in the world.

40.     Indeed, the La Oroya Complex is one of only four smelting facilities worldwide capable of recovering numerous metals and by-products from complex, poly-metallic concentrates with high levels of impurities.

41.     While most smelters recover only one or two metals and a few by-products from a "clean" concentrate (i.e., a concentrate with a high level of the target metal and a low level of

Electronically Filed - CITY OF ST. LOUIS - October 13, 2023 - 10:26 AM

impurities), the La Oroya Complex recovers 11 metals (copper, zinc, silver, lead, cadmium, indium, bismuth, gold, selenium, tellurium, and antimony) and numerous by-products (e.g., zinc sulfate, copper sulfate, sulfuric acid, arsenic trioxide, zinc dust, and zinc-silver concentrates) from the poly-metallic concentrates produced by the central Andean mines.

42.    The composition of the concentrates processed at the Complex has major implications for its design and operation and for its potential environmental impacts.

43.    The Complex's four circuits (copper, lead, precious metals, and zinc) are integrated so as to allow by-products and intermediary substances produced during the processing of concentrates in one circuit to be further processed and refined in the other circuits, thus maximizing the recovery of valuable metals.

44.    At the same time, the concentrates contain high levels of other substances that either lack economic value or that cannot be fully recovered, including: sulfur, arsenic, and cadmium.

45.    Thus, the process of isolating and refining the target metals creates substantial quantities of by-products, which contain substances that may be harmful to the environment and human health.

46.    In 1974, the Peruvian government nationalized the company and operated the smelter and mine as a state enterprise, Centromin Peru S.A.

47.    In November 1991, the Peruvian Government issued Legislative Decree 708, declaring the promotion of private investment in the mining sector in the national interest and eliminating the exclusive rights that previously had been granted to State-owned mining companies.

Electronically Filed - CITY OF ST. LOUIS - October 13, 2023 - 10:26 AM

48.     As the Peruvian Government later explained in its official 1999 White Paper[3]:

> Since 1960 the governing criterion was that the best way to promote the economic growth and redistribute their benefits was through the state intervention that allocated resources according to the criteria set by centralized planning.
>
> In contrast, in 1990, the implementation of a set of policies aimed at reducing the economic role of the State as well as to increase private sector activity assumes even greater importance.
>
> From that time on, there was a significant change in the role of the State starting to create the necessary conditions to attract foreign investment and, in parallel, to design a privatization policy aimed at ensuring that the private sector is the dynamic engine of the economy.

49.     A 1992 Resolution included Centromin in the privatization process. Peru created a special committee to oversee Centromin's privatization (Comité Especial de Privatización), including the sale of the La Oroya Complex (the "Special Privatization Committee" or "CEPRI").

50.     At the same time, the Peruvian Government began to implement a modern environmental legal framework.

51.     The new Environmental and Natural Resources Code (enacted in September 1990) imposed several general requirements on mining and metallurgical companies, including obligations to include in their facilities equipment for control of contaminants and to treat wastewaters used in the processing of minerals.

52.     In June 1993, the Peruvian Government issued Regulations for Environmental Protection in Mining and Metallurgy. Article 5 of the Regulations provided that companies operating in the sector would be "liable for any emissions, discharges and disposal of waste to the environment occurring as a result of processes carried out at their installations," and it

---

[3] Government of Peru, White Paper concerning the Fractional Privatization of Centromin, 1999

Electronically Filed - CITY OF ST. LOUIS - October 13, 2023 - 10:26 AM

obligated them "to avoid and prevent any elements and/or substances from surpassing the maximum allowable levels" to be issued by the Ministry of Energy & Mines.

53.     The outside consulting firm Knight Piésold advised in its 1996 report to the Peruvian Government that:

(i)     There was no simple remedy to the existing air quality problem, which extended to lead, SO2 and other particulate emissions.
(ii)    Any solution would require "detailed engineering evaluation beyond the scope of the present evaluation."
(iii)   Implementation of adequate controls to meet standards may take "in excess of the ten year implementation schedule being considered by the Peruvian Ministry."
(iv)    "Considerable flexibility in the implementation and application of new standards will be necessary if La Oroya is to continue as an economically viable operation."
(v)     "Continued long-term operation of the smelter and progress on privatization can be achieved only if La Oroya is subject to realistic requirements to gradually reduce emissions."

54.     With this knowledge and understanding, Doe Run, part of the Renco Group, purchased the smelter complex in 1997 from the state.

55.     As the owners and operators of the La Oroya Complex, Defendants are liable for the activities and the toxic environmental releases from the complex since the date Defendants purchased the complex, October 24, 1997.

56.     Plaintiffs have lived in the region of La Oroya, Peru and have been exposed to and harmed by the dangerous and toxic substances released from the La Oroya Complex.

57.     The smelter took the name of Doe Run Peru (DRP) metallurgical complex.

58.     When Doe Run purchased the facility it agreed to improve the facility and lessen its environmental impact.

59.     Doe Run failed to implement the environmental management plan that was a condition of its purchase of the smelter in 1997.

60.    Doe Run received several extensions of time from the Peruvian government to complete the environmental management plan. Despite these extensions, it failed to complete the plan.

61.    In 2002, The National Council for the Environment of Peru reported that Doe Run Peru emitted 3,312 tons/year of particulate matter, 380,136 tons/year of sulfur dioxide, 226 tons/year of nitrogen oxides, 847 tons/year of lead, 423 tons/year of arsenic, and 43 tons/year of cadmium.

62.    In November 2005, the Centers for Disease Control (CDC) in Atlanta analyzed blood and urine samples of two population samples, one from La Oroya, the study site, and one from Concepcion, the control site. These results indicated that 97% of children between six months and six years of age and 98% of children between seven and 12 years had elevated blood lead levels, in some cases three or four times the level of concern. According to the CDC, an elevated level is any level equal to or greater than 10 µg/dl in 2005 and now is 5 µg/dl.

63.    Doe Run halted operations at the facility in 2009 when it was unable to access financing as a result of environmental requirements for the site.

64.    The operation of the Doe Run facility has, by this point, harmed tens of thousands of people spanning decades and generations of families.

65.    The minor plaintiffs in this case live or have lived in or around La Oroya, Peru and were exposed to and injured by the harmful and toxic substances released from the Defendants' metallurgical complex.

66.    A group of research scientists from Saint Louis University School of Public Health in Saint Louis, Missouri who have studied La Oroya have concluded that the conditions in La Oroya constitute a public health crisis that poses serious health risks for all population

Electronically Filed - CITY OF ST. LOUIS - October 13, 2023 - 10:26 AM

Electronically Filed - CITY OF ST. LOUIS - October 13, 2023 - 10:26 AM

groups and especially for the most vulnerable groups such as infants and young children, including the minor plaintiffs. Beginning in 2005, these public health experts have performed ongoing studies to assess the health effects of environmental contamination produced by Defendants' La Oroya metallurgical complex. The purpose of these studies is to determine the extent of toxic metal exposure suffered by La Oroya residents and the studies have confirmed the gravity of the public health situation caused by Defendants' metallurgical complex. The study performed by Saint Louis University, show that over 99 percent of children in La Oroya have blood lead levels of greater than 10 µg/dl, which is the level considered to be dangerous and to cause permanent injuries.

67.     During the course of their ownership, operation, use, management, supervision, storage, maintenance, and/or control of operations of their metallurgical complex and related properties in La Oroya, Peru, and at all times relevant hereto, the Defendants, while located in the States of Missouri and/or New York, negligently, carelessly and recklessly, made decisions that resulted in the release of metals and other toxic and harmful substances, including but not limited to lead, arsenic, cadmium, and sulfur dioxide, into the air and water and onto the properties on which the minor plaintiffs have in the past and/or continue to reside, use and visit, which has resulted in toxic and harmful exposures to minor plaintiffs.

68.     The air quality level is critical not only because the minor plaintiffs must breathe this polluted air but also because the particulate matter within the air is dispersed in a dust form that enters and settles inside the minor plaintiffs' houses and is deposited on the ground and on all surfaces, including furniture, clothing, water, and crops.

69.     The health effects of lead poisoning are well known. The CDC has noted that: "No safe blood lead level in children has been identified. Even low levels of lead in blood have

16

Electronically Filed - CITY OF ST. LOUIS - October 13, 2023 - 10:26 AM

been shown to affect IQ, ability to pay attention, and academic achievement." Lead impacts nearly every organ and system of the human body. Lead causes multitudinous and serious injuries to the nervous system, which can lead to convulsions, coma and brain death.  It causes learning and behavioral disorders, memory loss, nausea, anemia, hearing loss, fatigue, colic, hypertension, and myalgia. Moreover, children under the age of 6 years old are more susceptible to the toxic effects of lead than are adults since the brain and central nervous system are not completely developed.

70.    Sulfur dioxide, another pollutant emitted continuously and at an excessive level from Defendants' metallurgical complex, damages circulatory and respiratory system, increases mortality, and is linked to lung cancer, especially when present along with elevated levels of particulate matter, as is the case in La Oroya. Due to the wrongful actions of the Defendants described herein, the level of sulfur dioxide in the air of La Oroya is unreasonably high and dangerous to the minor plaintiffs.

71.    The Saint Louis University study also shows that urine levels of cadmium in residents of La Oroya are at a level that causes injury. Cadmium is a recognized carcinogen. The Saint Louis University study also shows that La Oroya residents have elevated levels of arsenic, another known carcinogen.  Although suitable technologies and processes exist to prevent the pollution caused by the activities at the Defendants' metallurgical complex, such technology has not been implemented by Defendants at their La Oroya Complex.

72.    A recent study by researchers at Yale University found that the Metallurgical Complex of La Oroya (CMLH) exceeded the maximum limits of heavy metals in the air. These high levels were recorded even when the smelter was not operating, between December 2009 and July 2012. Hassan Sipra, a student researcher at the Environmental Protection Clinic at Yale

Electronically Filed - CITY OF ST. LOUIS - October 13, 2023 - 10:26 AM

University, found that "[w]hen the [metallurgical] complex was supposedly not operating, there were some records where the maximum permissible limit (LMP) was exceeded."

73.     Lead, cadmium and carbon dioxide exceeded maximum limits of concentration in the air.

74.     The preliminary research of Yale University found that levels of lead in the air were up to three times the maximum limits.

75.     The preliminary research of Yale University found that levels of sulfur dioxide (SO2) in the air exceeded up to 4500 times the maximum limit.

76.     The preliminary research of Yale University found that levels of cadmium in the air exceeded 45% and the highest recorded level was three times the maximum allowable limit (LMP).

77.     This research used information provided by Doe Run and the medical center of La Oroya between December 2009 and February 2014.

78.     During the course of their ownership, operation, use, management, supervision, storage, maintenance, or control of operations of the La Oroya Complex and related properties in La Oroya, Peru, the Defendants, while located in the States of Missouri or New York, made decisions regarding the operations of the complex. Those decisions were negligent, careless or reckless and resulted in the release of metals and other toxic and harmful substances, including lead, arsenic, cadmium, and sulfur dioxide, into the air and water and onto properties on which the minor plaintiffs reside, use or visit, which has resulted in toxic and harmful exposures to the minor plaintiffs.

Electronically Filed - CITY OF ST. LOUIS - October 13, 2023 - 10:26 AM

79.     Although suitable technologies and processes exist to prevent the pollution caused by the activities at the La Oroya Complex, such technology has not been implemented by Defendants at the complex.

80.     Defendants owned, operated, maintained, managed or used the La Oroya Complex and related operations and facilities, or acted in conspiracy with other defendants and continue to do so in a way that negligently, carelessly or recklessly generated, handled, released, disposed of, and failed to control and contain the metals and other toxic substances used and generated by the complex. This resulted in the release of toxic metals and gases and other toxic substances onto and around the properties on which the minor plaintiffs have in the past or continue to reside, use and visit, or to which they were exposed. Defendants also purposefully withheld information or deliberately deceived the minor plaintiffs and their parents and guardians with regard to the dangers of such exposures, resulting in toxic exposure to the minor plaintiffs.

81.     Each of the corporate Defendants owned, operated, used, managed, supervised, or controlled the La Oroya Complex and related operations and facilities in La Oroya or was a partner in or the legal and beneficial owner of the partnership interest in a general partnership known as the Doe Run Company, which is a fictitious name used by Renco or the partnership. As owners, operators or partners in the Doe Run Company, the corporate Defendants are jointly and severally liable for acts and releases related to the La Oroya Complex and related operations and facilities.

82.     Some or all of the corporate Defendants, pursuant to written or oral agreements, including the various Doe Run partnership agreements, expressly or impliedly assumed liabilities arising out of the operation of the La Oroya Complex and related operations and facilities since October 24, 1997. Alternatively, all of the Defendants acted jointly and in conspiracy with each other. The objectives of the conspiracy included the failure to adequately control the emissions

Electronically Filed - CITY OF ST. LOUIS - October 13, 2023 - 10:26 AM

from the La Oroya Complex and related operations and facilities that Defendants knew were being transported to properties on which the minor plaintiffs have or continue to reside, use or visit, or not to implement adequate pollution controls at the complex and related operations and facilities, or purposefully concealing information or deliberately deceiving the minor plaintiffs and their parents and guardians with regard to the dangers of such exposures, with the purpose of the cost reduction of profits, bonuses and the value of wages, stock, or stock options of Doe Run as well as the corporate Defendants.

83.    The corporate Defendants, while located in the States of Missouri or New York, exert complete control, not merely stock control, but complete domination of finances, policies, and business practices of Doe Run Peru. The control is so complete that the subsidiary has never had a separate mind, will, or existence of its own. Defendants control environmental expenditures, production practices, use of technology that would limit emissions, and policies including public relations policies and decisions regarding warnings given to the minor plaintiffs. Such control is used by Defendants to make substantial profit while causing injuries to the minor plaintiffs, constituting fraud and injustice that violates the minor plaintiffs' legal rights. This heinous use of control proximately caused the minor plaintiffs' injuries.

84.    At all relevant times herein, Defendants were acting by and through its partners, subsidiaries, agents, servants, and employees who were acting within the scope of their partnership, agency, or employment and in conspiracy with each other.

85.    As a direct and proximate result of the releases by Defendants, minor plaintiffs have suffered injuries, currently suffer and will continue to suffer damages and losses which include but are not limited to physical and psychological injuries, learning and other permanent disabilities, pain, mental anguish, emotional distress, the loss of household services, the cost of

medical, educational and rehabilitation expenses and other expenses of training and assistance, and loss of earnings, income, and earning capacity. Such injuries, damages and loses are reasonably likely to continue to occur in the future.

**PLAINTIFFS' EXPOSURE**

86.    The minor Plaintiffs have all been exposed to lead and/or other toxic substances as a result of the operations of the lead smelter owned and/or operated in La Oroya, Peru, by the Defendants.

87.    Plaintiffs have been exposed through the lead and/or other toxic substances being released into the air, soil, and water in and around La Oroya, Peru.

88.    Plaintiffs, where applicable, have also been exposed *in utero* when the mother carrying the child was pregnant and resided in La Oroya, Peru.

<u>COUNT I</u>

**(NEGLIGENCE – Defendants DOE RUN RESOURCES CORPORATION, D.R. ACQUISITION CORP., THE RENCO GROUP, INC., AND RENCO HOLDINGS, INC.)**

89.    Plaintiffs hereby repeat, reallege, and reiterate each and every allegation in the preceding paragraphs as if fully restated herein.

90.    Defendant Doe Run Resources Corporation together with Defendant D.R. Acquisition Corp. and Defendant Renco, while located in the States of Missouri or New York, exert complete control, not merely stock control, but complete domination of finances, policies, and business practices of Doe Run Peru. The control is so complete that the subsidiary has never had a separate mind, will, or existence of its own. Defendants Doe Run Resources, D.R. Acquisition Corp., and Renco control from the States of Missouri and New York, the expenditures, production practices, use of technology that would limit emissions, and policies including public relations and decision-making policies regarding information given to the minor plaintiffs. Such

Electronically Filed - CITY OF ST. LOUIS - October 13, 2023 - 10:26 AM

Electronically Filed - CITY OF ST. LOUIS - October 13, 2023 - 10:26 AM

control is used by Defendants to make substantial profit while causing injuries to the minor plaintiffs, constituting fraud and injustice that violates the minor plaintiffs' legal rights. This unjust use of control proximately caused the minor plaintiffs' injuries.

91.     Because Defendants Doe Run Resources Corporation, D.R. Acquisition Corp, and Renco, while located in the States of Missouri or New York, make decisions regarding expenditures, production practices, use of technology, policies regarding the operation of the La Oroya Complex, and the deliberate withholding of information regarding the dangers of the toxic substances released by Defendants, Defendants Doe Run Resources Corporation, D.R. Acquisition Corp., and Renco owe and have owed a duty to the minor plaintiffs who live in the vicinity of the complex, to control and contain the metals and other toxic substances it has generated, handled, stored, and disposed of at the La Oroya Complex and related operations and facilities at safe and non-toxic levels, and to warn and continue to warn the minor plaintiffs of the release of these toxic and harmful substances.

92.     Defendants Doe Run Resources Corporation, D.R. Acquisition Corp., and Renco through decisions made in the States of Missouri or New York and through their agents, owned, maintained, managed or used the La Oroya Complex and related operations and facilities, or acted in conspiracy with each other defendant and continues to do so in a way that negligently, carelessly, and recklessly generated, handled, stored, released, disposed of, and failed to control and contain the metals and other toxic substances used and generated by the complex, resulting in the release of toxic metals and gases and other toxic substances onto and around the properties on which the minor plaintiffs have in the past or continue to reside, use and visit, or were exposed, resulting in toxic exposure to the minor plaintiffs.

Electronically Filed - CITY OF ST. LOUIS - October 13, 2023 - 10:26 AM

93.     Defendants Doe Run Resources Corporation, D.R. Acquisition Corp., and Renco, through their decisions made in the States of Missouri or New York and through their agents, also negligently, carelessly, and recklessly failed and continue to fail to warn the minor plaintiffs of release of the toxic metals and gases and other toxic substances into the environment and community surrounding the La Oroya Complex and related operations and facilities, including the properties on which the minor plaintiffs have in the past or continue to reside, and of the reasonably foreseeable effects of such releases, including the dangers of inhaling or ingesting these toxic metals, gases, and other toxic substances.

94.     Defendants Doe Run Resources Corporation, D.R. Acquisition Corp., and Renco, through their decisions made in the States of Missouri or New York and through their agents, also purposefully withheld information or deliberately deceived the minor plaintiffs with regard to the dangers of exposure to the toxic substances released into the environment by their metallurgical complex and related operations and facilities.

95.     Defendants Doe Run Resources Corporation, D.R. Acquisition Corp., and Renco knew or should have known that the generation, handling, storage, release and disposal of the described metals and gases and other toxic substances at the La Oroya Complex and related operations and facilities would proximately cause damage to the minor plaintiffs.

96.     As a direct and proximate result of the releases from the Defendants' properties, operations, and facilities, the minor plaintiffs have suffered, currently suffer, and will continue to suffer injuries, damages, and losses which include but are not limited to physical and psychological injuries, learning and other permanent disabilities, pain, mental anguish, emotional distress, the loss of household services, the cost of medical, educational and rehabilitation expenses and other

Electronically Filed - CITY OF ST. LOUIS - October 13, 2023 - 10:26 AM

expenses of training and assistance, and loss of earnings, income, and earning capacity. Such injuries, damages and losses are reasonably likely to continue to occur in the future.

97.     The actions of Defendants Doe Run Resources Corporation, D.R. Acquisition Corp., and Renco in the form of decisions made from the States of Missouri or New York, were outrageous due to Defendants' evil motive or reckless indifference to the rights of the minor plaintiffs, entitling the minor plaintiffs to an award of punitive damages.

## COUNT II

**(CIVIL CONSPIRACY – Defendants DOE RUN RESOURCES CORPORATION, D.R. ACQUISITION CORP., THE RENCO GROUP, INC., and RENCO HOLDINGS, INC.)**

98.     Plaintiffs hereby repeat, reallege, and reiterate each and every allegation in the preceding paragraphs as if fully restated herein.

99.     Defendants Doe Run Resources Corporation, D.R. Acquisition Corp., and Renco themselves and through their agents, servants and employees, have acted jointly and in conspiracy with the individual Defendants to commit the torts alleged in this Petition, and are jointly and severally liable for the activities and toxic environmental releases from the operations of the La Oroya Complex.

100.     Defendants agreed to a scheme by which, from the States of Missouri or New York, they exert complete control, not merely stock control, but complete domination of the finances, policies, and business practices of Doe Run Peru, such control being so complete that the subsidiary has never had a separate mind, will, or existence of its own. From the States of Missouri or New York, Defendants control environmental expenditures, production practices, use of technology, policies including public relations and decision-making policies, and the deliberate withholding of information regarding the dangers of the toxic substances released by Defendants. Such control is used by Defendants to make substantial profit while causing injuries to the minor

Electronically Filed - CITY OF ST. LOUIS - October 13, 2023 - 10:26 AM

plaintiffs, constituting fraud and injustice that violates the minor plaintiffs' legal rights. This unjust use of control proximately caused the minor plaintiffs' injuries.

101.    One of the purposes of the conspiracy agreed upon between Defendants Doe Run Resources Corporation, D.R. Acquisition Corp., and Renco and the other Defendants includes to allow toxic substances to be released from their properties in La Oroya and related operations and facilities, resulting in damage to the minor plaintiffs, in order to avoid the cost of instituting procedures at and purchasing equipment for Defendants' metallurgical complex and related operations and facilities that would protect public health and the health of the minor plaintiffs, to increase the profits of Doe Run Resources Corporation, to increase the value of Defendant D.R. Acquisition Corp. and Defendant Renco, and to increase the incomes of the Defendants, and to avoid reduction of profits, bonuses, and the value of wages, stock, or stock options of the Defendants.

102.    Defendants Doe Run Resources Corporation, D.R. Acquisition Corp., and Renco together with the other Defendants did in fact allow toxic substances to be released from their properties in La Oroya and related operations and facilities in order to avoid the cost of instituting procedures and purchasing equipment at the La Oroya Complex and related operations and facilities.

103.    As a direct and proximate result of the toxic releases from the Defendants' properties, operations, and facilities by Defendant Doe Run Resources Corporation together with the other Defendants and their agents, the minor plaintiffs have suffered, currently suffer, and will continue to suffer injuries, damages, and losses which include but are not limited to physical and psychological injuries, learning and other permanent disabilities, pain, mental anguish, emotional distress, the loss of household services, the cost of medical, educational and rehabilitation expenses

Electronically Filed - CITY OF ST. LOUIS - October 13, 2023 - 10:26 AM

and other expenses of training and assistance, and loss of earnings, income, and earning capacity. Such injuries, damages and losses are reasonably likely to continue to occur in the future.

104.    The actions of Defendants Doe Run Resources Corporation, D.R. Acquisition Corp., and Renco in the form of decisions made from the States of Missouri or New York were outrageous due to Defendants' evil motive or reckless indifference to the rights of the minor plaintiffs, entitling the minor plaintiffs to an award of punitive damages.

## COUNT III

**(ABSOLUTE or STRICT LIABILITY – Defendants DOE RUN RESOURCES CORPORATION, D.R. ACQUISITION CORP, THE RENCO GROUP, INC., and RENCO HOLDINGS, INC.)**

105.    Plaintiffs hereby repeat, reallege, and reiterate each and every allegation in the preceding paragraphs as if fully restated herein.

106.    The ownership, operation, maintenance, management, handling, processing and use of metals and gases and other toxic substances at the La Oroya Complex and related operations and facilities for which Defendants Doe Run Resources Corporation, D.R. Acquisition Corp., and Renco are jointly and severally liable, constituted and continues to constitute an abnormally dangerous activity or ultra-hazardous activity, because such activities create a high risk of significant harm.

107.    Defendants Doe Run Resources Corporation, D.R. Acquisition Corp., and Renco are thus strictly liable to the minor plaintiffs for all damages which have resulted or will result from the release of the metals and other toxic substances as a result of the handling, storage, and disposal of such substances at the La Oroya Complex and related facilities and operations.

108.    The collection, handling, storage, and disposal of metals and other toxic substances by Defendants Doe Run Resources Corporation, D.R. Acquisition Corp., and Renco themselves or through their agents, servants and employees at Defendants' properties, has directly and

Electronically Filed - CITY OF ST. LOUIS - October 13, 2023 - 10:26 AM

proximately caused release of such substances into the environment and the community surrounding these properties including to properties where the minor plaintiffs have in the past or continue to reside, use and visit, or were exposed, resulting in toxic exposure to the minor plaintiffs.

109.    As a direct and proximate result of the releases from Defendants' properties, operations and facilities, the minor plaintiffs have suffered, currently suffer, and will continue to suffer injuries, damages and losses which include but are not limited to physical and psychological injuries, learning and other permanent disabilities, pain, mental anguish, emotional distress, the loss of household services, the cost of medical, educational, and rehabilitation expenses and other expenses of training and assistance, and loss of earnings, income, and earning capacity. Such injuries, damages and losses are reasonably likely to continue to occur in the future.

110.    The actions of Defendants Doe Run Resources Corporation, D.R. Acquisition Corp., and Renco in the form of decisions made from the States of Missouri or New York, were outrageous due to Defendant's evil motive or reckless indifference to the rights of the minor plaintiffs, entitling the minor plaintiffs to an award of punitive damages.

## COUNT IV

### (NEGLIGENCE – Defendants THEODORE P. FOX, JERRY PYATT, JEFFERY L. ZELMS, THEODORE P. FOX III, IRA L. RENNERT, and MARVIN K. KAISER)

111.    Plaintiffs hereby repeat, reallege, and reiterate each and every allegation in the preceding paragraphs as if fully restated herein.

112.    During times relevant herein, Defendant Kaiser was Vice President, Chief Financial Officer, and Chief Administrative Officer of the Doe Run Resources Corporation and its subsidiaries, including Doe Run Peru. As an officer of Doe Run, Defendant Kaiser is liable to minor plaintiffs because he had actual knowledge of Doe Run's tortious and wrongful conduct and participated in it including the acts and omissions of Defendants described herein, and is thus liable

Electronically Filed - CITY OF ST. LOUIS - October 13, 2023 - 10:26 AM

in his individual capacity. This liability is in addition to and independent of any liability based on conspiracy.

113.    During times relevant herein, Defendant Fox was Vice President of Finance and Chief Financial Officer of the Doe Run Resources Corporation and its subsidiaries, including Doe Run Peru. As an officer of Doe Run, Defendant Fox is liable to the minor plaintiffs because he had actual knowledge of Doe Run's tortious and wrongful conduct and participated in it including the acts and omissions of Defendants described herein, and is thus liable in his individual capacity. This liability is in addition to and independent of any liability based on conspiracy.

114.    During times relevant herein, Defendant Pyatt was and continues to be the Chief Executive Officer of Defendant Doe Run Resources Corporation and its subsidiaries, including Doe Run Peru. He is also currently the President of Doe Run Resources Corporation and served as the President of Doe Run Peru from approximately September 2003 to March 2006 and as the General Manager of Doe Run Peru from approximately September 2003 to January 2006. As an officer of Doe Run, Defendant Pyatt is liable to the minor plaintiffs because he had actual knowledge of Doe Run's tortious and wrongful conduct and participated in it including the acts and omissions of Defendants described herein, and is thus liable in his individual capacity. This liability is in addition to and independent of any liability based on conspiracy.

115.    During times relevant herein, Defendant Zelms was President and Chief Executive Officer of the Doe Run Resources Corporation and its subsidiaries, including Doe Run Peru. As an officer of Doe Run, Defendant Zelms is liable to the minor plaintiffs because he had actual knowledge of Doe Run's tortious and wrongful conduct and participated in it including the acts and omissions of Defendants described herein, and is thus liable in his individual capacity. This liability is in addition to and independent of any liability based on conspiracy.

116.    At all relevant times herein, Defendant Rennert was and is the Chairman and Chief Executive Officer of Defendant Renco and Chairman of Defendant Doe Run Resources Corporation. As an officer of Renco and Doe Run, Defendant Rennert is liable to the minor plaintiffs because he had actual knowledge of Doe Run's tortious wrongful conduct and participated in it, and thus is individually liable. This liability is in addition to and independent of any liability based on conspiracy.

117.    As officers of Defendant Doe Run Resources Corporation, Defendants Fox, Pyatt, Zelms, Rennert, and Kaiser are liable to the minor plaintiffs because they had actual knowledge of Doe Run's tortious and wrongful conduct and participated in it, including the acts and omissions of Defendants described herein, and is thus liable in his individual capacity. This liability is in addition to and independent of any liability based on conspiracy.

118.    In particular, Defendants Fox, Pyatt, Zelms, Rennert, and Kaiser's responsibilities, actions and omissions included but were not limited to approval of expenditures for pollution control measures and expenditures for the remediation of properties. Defendants Fox, Pyatt, Zelms, Rennert, and Kaiser's had involvement in the budgeting process of Doe Run including setting environmental goals and the pollution control budget for the La Oroya Complex and related operations and facilities. Defendants Fox, Pyatt, Zelms, Rennert, and Kaiser also had knowledge of technologies owned by the Doe Run Company that were available to remediate contaminated soil which were not used. Defendants Fox, Pyatt, Zelms, Rennert, and Kaiser had knowledge of the release of emissions from the La Oroya Complex and related operations and facilities to the La Oroya communities surrounding them, including properties on which the minor plaintiffs have resided or continue to reside, use and visit and failed to inform these communities or take any action to eliminate or reduce the release of metals and other toxic substances. Defendants Fox,

Electronically Filed - CITY OF ST. LOUIS - October 13, 2023 - 10:26 AM

Electronically Filed - CITY OF ST. LOUIS - October 13, 2023 - 10:26 AM

Pyatt, Zelms, Rennert, and Kaiser participated in and approved budgets which delayed implementation of proper pollution control measures and delayed remediation of properties contaminated by the releases from the complex and related operations and facilities. Defendants Fox, Pyatt, Zelms, Rennert, and Kaiser purposefully withheld information or deliberately deceived the minor plaintiffs with regard to the dangers of the toxic substances released from the La Oroya Complex and related operations and facilities.

119.    As a direct and proximate result of the releases of toxic materials from the Defendants' properties, operations, and facilities, the minor plaintiffs have suffered, currently suffer, and will continue to suffer injuries, damages, and losses which include but are not limited to physical and psychological injuries, learning and other permanent disabilities, pain, mental anguish, emotional distress, the loss of household services, the cost of medical, educational and rehabilitation expenses and other expenses of training and assistance, and loss of earnings, income, and earning capacity. Such injuries, damages and losses are reasonably likely to continue to occur in the future.

120.    The actions of Defendants Fox, Pyatt, Zelms, Rennert, and Kaiser were outrageous due to Defendant's evil motive or reckless indifference to the rights of the minor plaintiffs, entitling the minor plaintiffs to an award of punitive damages.

## COUNT V

**(CIVIL CONSPIRACY – Defendants TERRY P. FOX, JERRY PYATT, JEFFERY L. ZELMS, THEODORE P. FOX III, IRA L. RENNERT, and MARVIN K. KAISER)**

121.    Plaintiffs hereby repeat, reallege, and reiterate each and every allegation in the preceding paragraphs as if fully restated herein.

122.    During times relevant herein, Defendants Fox, Pyatt, Zelms, Rennert, and Kaiser were acting jointly and in conspiracy with each other and with the corporate Defendants.

30

Electronically Filed - CITY OF ST. LOUIS - October 13, 2023 - 10:26 AM

Defendants agreed to a scheme by which they exert complete control, not merely stock control, but complete domination of the finances, policies, and business practices of Doe Run Peru, such control being so complete that the subsidiary has never had a separate mind, will, or existence of its own. Defendants control environmental expenditures, production practices, use of technology, policies including public relations and decision-making policies, and the deliberate withholding of information regarding the dangers of the toxic substances released by Defendants. Such control is used by Defendants to make substantial profit while causing injuries to the minor plaintiffs, constituting fraud and injustice that violates the minor plaintiffs' legal rights. This unjust use of control proximately caused the minor plaintiffs' injuries.

123.    Defendants Fox, Pyatt, Zelms, Rennert, and Kaiser had and have an economic motive and personally benefited from the conspiracy. The objectives of the conspiracy included to fail to adequately control the toxic environmental releases from the La Oroya Complex and related operations and facilities that Defendants knew were being released or transported to properties on which the minor plaintiffs have in the past or continue to reside, visit or use; or not to implement adequate pollution controls at the complex because of the cost and reduction of profits, value, bonuses and the value of wages, stock or stock options of Doe Run as well as other Defendants.

124.    One of the purposes of the conspiracy agreed upon between Defendants Fox, Pyatt, Zelms, Rennert, and Kaiser and the corporate Defendants included to allow toxic substances to be released from their properties in La Oroya and related operations and facilities, resulting in damage to the minor plaintiffs, in order to avoid the cost of instituting procedures and purchasing equipment at the La Oroya Complex and related operations and facilities that would protect public health and the health of the minor plaintiffs, to increase the profits of Doe Run Resources Corporation, to increase the value of Defendant D.R. Acquisition Corp. and defendant Renco, and

Electronically Filed - CITY OF ST. LOUIS - October 13, 2023 - 10:26 AM

to increase the incomes of the Defendants and to avoid reduction of profits, bonuses, and the value of wages, stock, or stock options of the Defendants.

125.     Defendants Fox, Pyatt, Zelms, Rennert, and Kaiser together with the corporate Defendants did in fact allow toxic substances to be released from their properties in La Oroya and related operations and facilities in order to avoid the cost of instituting procedures and purchasing equipment at the La Oroya Complex and related operations and facilities.

126.     As a direct and proximate result of the toxic releases from the Defendants' properties, operations, and facilities by Defendants Fox, Pyatt, Zelms, Rennert, and Kaiser together with the corporate Defendants, the minor plaintiffs have suffered, currently suffer, and will continue to suffer injuries, damages, and losses which include but are not limited to physical and psychological injuries, learning and other permanent disabilities, pain, mental anguish, emotional distress, the loss of household services, the cost of medical, educational and rehabilitation expenses and other expenses of training and assistance, and loss of earnings, income, and earning capacity. Such injuries, damages and losses are reasonably likely to continue to occur in the future.

127.     The actions of Defendants Fox, Pyatt, Zelms, Rennert, and Kaiser were outrageous due to Defendant's evil motive or reckless indifference to the rights of the minor plaintiffs, entitling the minor plaintiffs to an award of punitive damages.

## COUNT VI

### (ABSOLUTE or STRICT LIABILITY – Defendants TERRY P. FOX, JERRY PYATT, JEFFERY L. ZELMS, THEODORE P. FOX III, IRA L. RENNERT, and MARVIN K. KAISER)

128.     Plaintiffs hereby repeat, reallege, and reiterate each and every allegation in the preceding paragraphs as if fully restated herein.

129.     Defendants Fox, Pyatt, Zelms, Rennert, and Kaiser had actual knowledge of the corporate Defendants' tortious conduct and participated in it, including the acts and omissions of

Electronically Filed - CITY OF ST. LOUIS - October 13, 2023 - 10:26 AM

Defendants described herein, involving the ownership, operation, maintenance, management, handling, processing and use of metals and gases and other toxic substances at the La Oroya Complex and related operations and facilities which constituted and continues to constitute an abnormally dangerous activity or ultra hazardous activity, because such activities create a high risk of significant harm, and is thus jointly and severally liable in his individual capacity.

130.    Defendants Fox, Pyatt, Zelms, Rennert, and Kaiser are thus strictly liable to the minor plaintiffs for all damages which have resulted or will result from the release of the metals and other toxic substances as a result of the handling, storage, and disposal of such substances at the La Oroya Complex and related facilities and operations.

131.    The collection, handling, storage, and disposal of metals and other toxic substances at Defendants' properties has directly and proximately caused release of such substances into the environment and the community surrounding these properties including to properties where the minor plaintiffs have in the past or continue to reside, use and visit, or were exposed, resulting in toxic exposure to the minor plaintiffs.

132.    As a direct and proximate result of the releases from the Defendants' properties, operations and facilities, the minor plaintiffs have suffered, currently suffer, and will continue to suffer injuries, damages and losses which include but are not limited to physical and psychological injuries, learning and other permanent disabilities, pain, mental anguish, emotional distress, the loss of household services, the cost of medical, educational, and rehabilitation expenses and other expenses of training and assistance, and loss of earnings, income, and earning capacity. Such injuries, damages and losses are reasonably likely to continue to occur in the future.

Electronically Filed - CITY OF ST. LOUIS - October 13, 2023 - 10:26 AM

133.    The actions of Defendants Fox, Pyatt, Zelms, Rennert, and Kaiser were outrageous due to Defendant's evil motive or reckless indifference to the rights of the minor plaintiffs, entitling the minor plaintiffs to an award of punitive damages.

## COUNT VII

## (CONTRIBUTION BASED ON TORTIOUS CONDUCT OF ENTITIES ACTING IN CONCERT – ALL DEFENDANTS)

134.    Plaintiffs hereby repeat, reallege, and reiterate each and every allegation in the preceding paragraphs as if fully restated herein.

135.    Each Defendant bears joint liability with all other defendants for the claims of negligence, conspiracy, and strict liability on the part of each Defendant in the respects hereinafter alleged, which caused or contributed to the injuries claimed by the minor plaintiffs.

136.    The release by Defendants of toxic metals and gases and other toxic substances onto and around the properties on which the minor plaintiffs have in the past or continue to reside, use, and visit or were exposed was caused or contributed to be caused by the negligence of each Defendant in the respects hereinafter alleged.

137.    Each Defendant was and continues to be negligent in the following respects:

a.    Negligently, carelessly, and recklessly generating, handling, storing, releasing, disposing of, or failing to control and contain the metals and other toxic substances used and generated by the complex.

b.    Negligently, carelessly, recklessly failing to warn the minor plaintiffs of the release of toxic metals and gases and other substances into the environment and community surrounding the La Oroya Complex and related operations and facilities, or deliberate deceiving the minor plaintiffs with regard to the dangers of the toxic substances released by Defendants.

Electronically Filed - CITY OF ST. LOUIS - October 13, 2023 - 10:26 AM

c.    Negligently, carelessly, and recklessly failing to warn the minor plaintiffs of the dangers of inhaling or ingesting toxic metals, gases, and other toxic substances generated by and released from the La Oroya Complex and related operations and facilities, or the potential of ingesting harmful levels of toxic metals and other toxic substances.

138.    Each Defendant acted in concert with the other Defendants and pursuant to a common design with the other Defendants in committing the tortious acts alleged above because each Defendant did not want to have to acknowledge, warn of, or properly control the toxic substances generated, handled, stored, released, and disposed of at the La Oroya Complex and related operations and facilities to avoid the costs of instituting procedures and purchasing equipment at the complex and related operations and facilities that would protect public health and the health of the minor plaintiffs and to avoid reduction of profits, bonuses, and the value of wages, stock, or stock options of the corporate Defendants.

139.    Each Defendant also acted in concert with the other Defendants and pursuant to a common design with the other Defendants to exert complete control, not merely stock control, but complete domination of finances, policies, and business practices of Doe Run Peru. The control is so complete that the subsidiary has never had a separate mind, will, or existence of its own. Defendants control environmental expenditures, production practices, use of technology that would limit emissions, and policies including public relations policies and decisions regarding information given to the minor plaintiffs. Such control is used by Defendants to make substantial profit while causing injuries to the minor plaintiffs, constituting fraud and injustice that violates the minor plaintiffs' legal rights. This unjust use of control proximately caused the minor plaintiffs' injuries.

Electronically Filed - CITY OF ST. LOUIS - October 13, 2023 - 10:26 AM

140.    Each Defendant knew that the tortious acts of the other Defendants herein breached a legal duty of the other Defendants, yet each Defendant gave substantial assistance and encouragement to the other Defendants to commit such tortious acts because each Defendant knew that if the other Defendants acted otherwise, to avoid the costs of instituting procedures and purchasing equipment at the La Oroya Complex and related operations and facilities that would protect public health and the health of the minor plaintiffs and to avoid reduction of profits, bonuses, and the value of wages, stock, or stock options of the corporate Defendants.

141.    Each Defendant gave substantial assistance to the other Defendants herein accomplishing the tortious acts alleged by agreeing, either expressly or tacitly, not to acknowledge, warn of, or properly control the toxic substances generated, handled, stored, released, and disposed of at the La Oroya Complex and related operations and facilities.

142.    As a result of the joint negligence of the Defendants herein alleged, the minor plaintiffs have suffered, currently suffer, and will continue to suffer injuries, damages, and losses which include but are not limited to physical and psychological injuries, learning and other permanent disabilities, pain, mental anguish, emotional distress, the loss of household services, the cost of medical, educational and rehabilitation expenses and other expenses of training and assistance, and loss of earnings, income, and earning capacity. Such injuries, damages and losses are reasonably likely to continue to occur in the future.

143.    Each Defendant is liable for the negligent acts of each of the other Defendants herein in the respects herein alleged that caused or contributed to cause injury to the minor plaintiffs.

## **JURY TRIAL DEMAND**

Plaintiffs demand a jury trial as to all claims and issues triable of right by a jury.

Electronically Filed - CITY OF ST. LOUIS - October 13, 2023 - 10:26 AM

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray that this Honorable Court do the following:

A.  an amount of damages in such sum as is fair and reasonable to compensate the minor plaintiffs in an amount in excess of TWENTY FIVE THOUSANDS DOLLARS ($25,000);

B.  for punitive damages in an amount sufficient to punish and deter the Defendants from further such conduct;

C.  for their costs and expenses;

D.  for pre- and post-judgment interest as allowed by statute and law; and

E.  for such other and further relief the Court deems just and proper.

F.  Grant such other relief as is just and proper.

Dated: October 13, 2023.

Respectfully submitted,

**NAPOLI SHKOLNIK as registered tradename for NSPR Law Services**

By: /s/ Hunter Shkolnik
Hunter Shkolnik, #2031458NY
270 Munoz Rivera Avenue, Suite 201
Hato Rey, Puerto Rico 00918
(787) 493-5088
hunter@napolilaw.com

**RODRIGUEZ TRAMONT + NUÑEZ, P.A.**

By:  /s/ Frank R. Rodriguez
Frank R. Rodriguez, #348988FL
Paulino A. Nuñez, #814806FL
255 Alhambra Cir., Suite 1150
Coral Gables, FL 33134
(305) 350-2300
frr@rtgn-law.com
pan@rtgn-law.com

**THE GORI LAW FIRM, P.C.**

By: /s/ Sara M. Salger
Sara M. Salger, MO Bar #61393
Ryan Mayfield, MO Bar #67322
156 N. Main Street
Edwardsville, IL 62025
(618) 659-9833
sara@gorilaw.com
rmayfield@gorilaw.com